```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 15-1518(DSD/HB)
```

U.S. Department of the Treasury,

       Plaintiff,

v.                                                  **ORDER**

Thomas E. Haider,

       Defendant.

      Christopher B. Harwood, United States Attorney's Office, Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007, counsel for plaintiff.

      Ian M. Comisky, Esq., Blank Rome, LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103, counsel for defendant.

This matter is before the court upon the motion to dismiss by defendant Thomas E. Haider. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion.

**BACKGROUND**

This enforcement action brought by plaintiff United States Department of the Treasury arises from a civil assessment against Haider by the Treasury's Financial Crimes Enforcement Network (FinCEN). Haider served as chief compliance officer for MoneyGram International Inc. from 2003 to May 23, 2008. In that role, Haider

was responsible for ensuring that MoneyGram complied with the Bank Secrecy Act, 31 U.S.C. § 5311, et seq. (BSA).  Specifically relevant here, Haider was responsible for ensuring that MoneyGram implemented and maintained an effective anti-money laundering (AML) program, and filed timely suspicious activity reports (SARs) with FinCEN.

After Haider left MoneyGram, the government impaneled a grand jury in the Middle District of Pennsylvania to investigate whether MoneyGram had violated the BSA.[1]  In 2010, FinCEN requested access to grand jury information under 18 U.S.C. § 3322(b), to explore possible regulatory action against MoneyGram. Hu Decl. Ex. B.  The court granted the request and ordered disclosure of "grand jury information and all matters occurring before the grand jury in connection with the grand jury investigation of MoneyGram" to certain FinCEN personnel.  Id. at 2.  In 2012, the court amended the order to allow disclosure to additional FinCEN personnel.  Id. Ex. C, at 2.  In 2013, the court again amended the disclosure order to include additional FinCEN personnel and certain personnel in the U.S. Attorney's Office for the Southern District of New York.  Id. Ex. D, at 3-4.  The court specifically recognized FinCEN's need to disclose grand jury information to "attorneys assigned to advise and represent FinCEN in [any] civil injunctive and penalty matter

---

[1]  The court will not go into detail about the underlying violations in the context of this order, because they are not yet directly at issue.

2

in the Southern District of New York, and to make such further disclosures as may eventually be necessary in any administrative proceeding or civil litigation commenced under [the BSA]." Id. at 2.  The court further authorized FinCEN to "make such further disclosures as may be required in connection with any eventual administrative proceeding or civil litigation, subject to any protective order that may be entered by a court with jurisdiction over such proceeding." Id. at 4.

In November 2012, MoneyGram entered into a deferred prosecution agreement (DPA) with the Department of Justice, in which MoneyGram admitted that it violated the BSA by willfully failing to implement an effective AML program. Compl. ¶¶ 62-63. MoneyGram agreed to forfeit $100 million and to retain an independent compliance monitor approved by the government. Id. ¶ 62.

On December 18, 2014, FinCEN assessed a $1 million civil monetary penalty against Haider based on his alleged willful failure to ensure that Moneygram (1) implemented and maintained an effective AML program, and (2) filed timely SARs. Id. ¶ 64; Hu Decl. Ex. A.  For the alleged AML violations, Haider is subject to a $25,000 per day penalty, and for the alleged failure to timely file SARs, he is subject to a penalty of $25,000 per violation. See Compl. ¶ 66 (citing 31 U.S.C. § 5321(a)). Haider and FinCEN agreed to toll the applicable statute of limitations from November

3

15, 2013 to December 19, 2014.  Id. ¶ 65.  As a result, FinCEN based its assessment on Haider's conduct during the 190-day period between November 15, 2007 and May 23, 2008.  Id.  FinCEN has not specifically identified the violations included in the assessment, but explains that the penalty is "substantially less" than it could have been.[2]  Id. ¶ 65.

The same day FinCEN assessed the penalty, the government filed the instant action in the Southern District of New York, seeking an order reducing the assessment to a judgment and enjoining Haider from working for any "financial institution," as that term is defined in the BSA.  The parties later agreed to transfer the case to this court.  Haider now moves to dismiss.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A

---

[2]  For example, FinCEN alleges that because the AML violations carry a $25,000 per-day penalty, Haider faced a total penalty of $4.75 million for AML violations alone.  See id. ¶ 67.  FinCEN also alleges over 40 SARs violations, each of which may trigger a $25,000 civil penalty.  See id. ¶¶ 97-101, 104-05, 107; 31 U.S.C. § 5321(a)(1).

claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the court considers the assessment and collateral court orders.

**II. Applicability of § 5318(h)**

Haider first challenges FinCEN's assessment under § 5318(h), which provides that, "[i]n order to guard against money laundering through financial institutions, each financial institution shall establish anti-money laundering programs...." Haider argues that the court should dismiss the government's claim under this provision because it applies only to financial institutions and not

to individuals. Haider notes that § 5318(g), in contrast, provides that "any financial institution, and any director, officer, employee, or agent of any financial institution, [may be required] to report any suspicious transactions relevant to a possible violation of law or regulation."

The government responds that the court must turn to the BSA's more general civil penalty provision, § 5321(a)(1), to determine whether Haider is personally subject to penalty under § 5318(h). Section 5321(a)(1) authorizes the imposition of civil penalties against a "domestic financial institution or nonfinancial trade or business, and a partner, director, officer, or employee of a domestic financial institution or nonfinancial trade or business, willfully violating this subchapter or a regulation prescribed or order issued under this subchapter (except sections 5314 and 5315 of this title or a regulation prescribed under sections 5314 and 5315)...."

"[A]s with any question of statutory interpretation, the court begins its analysis with the plain language of the statute ...." Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011) (citation omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Id. (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992)).

Section 5321(a)(1)'s explicit reference to "partner[s],

director[s], officer[s], and employee[s]" demonstrates Congress' intent to subject individuals to liability in connection with a violation of any provision of the BSA or its regulations, excluding the specifically excepted provisions (i.e., §§ 5314 and 5315). Because § 5318(h) is not listed as one of those exceptions, the plain language of the statute provides that a civil penalty may be imposed on corporate officers and employees like Haider, who was responsible for designing and overseeing MoneyGram's AML program. See Compl. ¶¶ 13, 19, 46-48, 68-69.  As a result, the government may proceed against Haider under § 5318(h).

**III. Assessment Amount**

Haider next argues that the court should dismiss the alleged SAR violations because the government has failed to specifically identify which violations comprise the monetary penalty.  In other words, Haider argues that the government's failure to provide an accounting of each violation used to tally the penalty renders the complaint insufficient under Rule 12(b)(6).  The court disagrees. As the government argues, the $1 million penalty is amply supported by the allegations underlying the SAR violations alone. See Compl. ¶¶ 97-101, 104-05, 107.

Furthermore, analysis of the penalty amount is premature. Haider will have the opportunity to engage in discovery, during which he may fully explore the basis for the penalty.  Thereafter, and assuming that the government has established Haider's

liability, the court will consider whether the evidence supports the amount of the penalty.

**IV. Injunctive Relief**

Next, Haider argues that the government's request for injunctive relief[3] should be dismissed as time-barred. The parties agree that the statutory authority for FinCEN's proposed injunctive relief does not include a limitations period. See 31 U.S.C. § 5320. They disagree about what, if any, limitations period should fill that void. According to Haider, the court should apply the general five-year limitations period that governs actions brought by the United States. See 31 U.S.C. § 2462 ("Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued[.]"). Haider reasons that the injunction here is penal in nature and therefore expressly covered by § 2462. The government contends that no limitations period applies because the injunctive relief is remedial rather than punitive. The government alternatively argues that if a limitations period must be imposed, the concurrent remedy

---

[3] Specifically, the government seeks to enjoin Haider from "participating, directly or indirectly, in the conduct of the affairs of any financial institution that is located in the United States or conducts business in the United States, for a term of years sufficient to prevent further harm to the public." Compl. ¶¶ 135, 143.

doctrine requires that it mirror the six-year limitations period for monetary penalties.

The threshold issue is whether the proposed injunctive relief is penal or equitable in nature. "[T]he limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish, but does not apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm." SEC v. Quinlan, 373 F. App'x 581, 587 (6th Cir. 2010); see also Johnson v. SEC, 87 F.3d 484, 488 (D.C. Cir. 1997) (same). The court is unable to determine this issue as a matter of law, because whether the proposed injunction is designed to remedy Haider's alleged malfeasance or to protect the public from future harm requires factual inquiry. See Johnson, 87 F.3d at 488-89 (holding that a fact-intensive inquiry is required to determine the nature of injunctive relief); SEC v. Microtune, 783 F. Supp. 2d 867, 884 (N.D. Tex. 2011) (citation omitted) ("Determining whether proposed remedies are penalties subject to Section 2462 requires a 'fact-intensive inquiry.'"); SEC v. Alexander, 248 F.R.D. 108, 116 (E.D.N.Y. 2007) (declining to rule on applicability of § 2462 as a matter of law because "it is impossible...to foresee every potential factual development" that could bear on the issue). Specifically, the court must consider, among other things, the likelihood that Haider will engage in similar misconduct in the future and the collateral consequences of the proposed injunction. SEC v. Jones, 476 F. Supp. 2d 374, 383-84 (S.D.N.Y. 2007). The

court cannot do so absent a well-developed factual record. As a result, the court declines to decide the issue at this time.[4]

## V. Grand Jury Materials

Haider argues that the court should dismiss the complaint because the government's investigation and assessment rely on improperly obtained grand jury materials. As noted, the Middle District of Pennsylvania granted FinCEN access to that information in three separate orders. See Hu Decl. Exs. B-D. In the last order, the court specifically authorized FinCEN to use the information in collateral civil litigation. Id. Ex. D, at 4. Haider does not argue that FinCEN violated those orders, but rather that the Middle District of Pennsylvania erred in issuing them. Thus, Haider asks the court to vacate an order of another federal district court. The court declines to do so, and will neither dismiss this action nor prevent use of the grand jury materials in the context of this case. The court will, however, entertain a motion for protective order to ensure proper handling of the grand jury materials.

## VI. Due Process

Finally, Haider argues that the complaint should be dismissed because the government's assessment violates his right to procedural due process. Haider specifically argues that his due

---

[4] The court also defers ruling on whether the concurrent remedy doctrine applies.

process rights have been violated because (1) FinCEN is not subject to regulations requiring it to afford meaningful pre-assessment process and review; (2) FinCEN did not allow him to review all relevant materials, thereby preventing him from effectively rebutting FinCEN's case against him; and (3) FinCEN's director was biased against him given her prior work in the MoneyGram matter. Haider also argues that the government disclosed the investigation to the media, which caused Haider's employer to fire him, and compounded the due process violations. The government makes several counter-arguments in response, the most persuasive of which is that Haider's due process rights have not been implicated because he has not yet been deprived of a cognizable right.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake.... Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citations omitted); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"). Here, although Haider's property interests are ultimately at stake, the underlying administrative process did not deprive him of such interests. Rather, the assessment procedure is merely the first step in the process. The BSA expressly authorizes FinCEN to assess a civil

11

penalty and then commence a civil action to recover that penalty. 31 U.S.C. § 5321(b)(1)-(2). Indeed, the government acknowledges that it must await judgment from this court before it may collect the assessment and that it may not seek interest on the assessment in the interim. Likewise, the government's requested injunction is not included in the assessment and must be imposed by the court. As a result, to date, Haider has not yet been deprived of his property interests.

Moreover, according to the government, and consistent with prior enforcement actions, the civil action necessarily includes discovery and the right to a trial de novo on the fully developed record.[5] See, e.g., Moore v. United States, No. 13-2063, 2015 WL 1510007, at *4 (W.D. Wash. Apr. 1, 2015) (applying de novo review on summary judgment to the IRS's determination that plaintiff violated the BSA). In other words, Haider will have a full opportunity to explore the government's case and his defenses in discovery, which will then be followed by a motion for summary judgment, trial, or both. Under these circumstances, the court cannot conclude that there has been a violation of Haider's due process rights. See Nickey v. Mississippi, 292 U.S. 393, 396 (1934) (holding that there is no constitutional mandate that

---

[5] It may be that although the issue of Haider's liability is reviewed de novo, the amount of the assessment is reviewed for an abuse of discretion. The court declines to decide that issue at this time, nor does it determine whether application of abuse-of-discretion standard implicates Haider's right to due process.

defendant have notice and opportunity to respond at administrative level if "all available defenses may be presented to a competent tribunal before exaction of the [obligation]").

The court does not consider at this time whether the alleged bias and disclosure to the media constitute violations of Haider's due process rights. The court will allow the parties to proceed with discovery on those issues and reserves their resolution for another day.

**CONCLUSION**

Accordingly, based on the above, IT IS HEREBY ORDERED that the motion to dismiss [ECF No. 36] is denied.

Dated:  January 8, 2016

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court